IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

WILDEARTH GUARDIANS,

        Plaintiff,

v.   No. CIV 12-118 LFG/KBM

JAMES LANE, Director of the New Mexico
Department of Game and Fish, sued in his
official capacity; and JIM McCLINTIC,
Chairman of the New Mexico State Game
Commission, sued in his official capacity,

        Defendants,

and

NEW MEXICO TRAPPERS ASSOCIATION,
NEW MEXICO COUNCIL OF OUTFITTERS
& GUIDES, INC., NEW MEXICO FARM &
LIVESTOCK BUREAU, COALITION OF
ARIZONA/NEW MEXICO COUNTIES FOR
STABLE ECONOMIC GROWTH, UNITED
SPORTSMEN FOR FISH AND WILDLIFE, INC.,
NEW MEXICO CATTLE GROWERS'
ASSOCIATION, NEW MEXICO WOOL GROWERS,
INC., AND NEW MEXICO FEDERAL LANDS COUNCIL,

        Defendant-Intervenors.

## MEMORANDUM OPINION AND ORDER

THIS MATTER is before the Court on the Motion of Safari Club International ("Safari Club") for leave to participate as *amicus curiae* in this matter. [Doc. Nos. 38, 39.] State Defendants and Defendant-Intervenors do not oppose Safari Club's participation as *amicus* counsel, but Plaintiff WildEarth Guardians ("Guardians") opposes the request. [Doc. Nos. 38, 52.] The motion is fully

briefed. [Doc. Nos. 38, 39, 52, 54.] After careful consideration of the pertinent law, pleadings, and attachments, the Court denies Safari Club's request to participate as *amicus curiae* in this litigation. The Court's reasoning follows.

**Procedural Summary**

On February 7, 2012, Guardians filed its Complaint for Declaratory and Injunctive Relief against James Lane, Director of the New Mexico Department of Game and Fish, and Jim McClintic, Chairman of the New Mexico State Game Commission ("Defendants" or "State Defendants"). [Doc. 1.] Guardians challenges State Defendants' "continued authorization of trapping within the occupied range of the critically endangered Mexican gray wolf . . . without exercising due care to avoid trapping these wolves." [Id., at 1.] Guardians alleges that State Defendants are in violation of specific sections of the Endangered Species Act ("ESA") and seeks a declaratory judgment to this effect and an injunction requiring Defendants to comply with the law. [Id., at 1-2.]

On April 6, 2012, Guardians filed a motion for summary judgment. [Doc. 11.] That motion is fully briefed and pending before the Court. On April 23, 2012, in lieu of filing an answer, Defendants filed a motion to dismiss. [Doc. 19.] That motion is also fully briefed and ready for resolution.

On April 30, 2012, Defendant-Intervenors filed an unopposed motion to intervene in this action. [Doc. Nos. 20, 21.] On May 2, 2012, the Court entered an order granting the unopposed motion for intervention. [Doc. 27.]

On May 14, 2012, seven days after Defendants and Defendant-Intervenors filed extensive responses in opposition to Guardians' motion for summary judgment, Safari Club filed its motion to participate as *amicus* counsel. [Doc. Nos. 38, 29.] This Memorandum Opinion and Order addresses only Safari Club's motion for leave to file an *amicus* brief.

**Legal Standard**

Federal courts have broad discretion in allowing participation as *amicus curiae*.[1]  *See, e.g.,* United States v. Michigan, 940 F.2d 143, 165 (6th Cir. 1991); Clark v. Sandusky, 205 F.2d 915, 917 (7th Cir. 1953); United States v. Ahmed, 788 F.Supp. 196, 198 n. 1 (S.D.N.Y. 1992), *aff'd*, 980 F.2d 161 (2d Cir. 1992). *See also* Cmty. Ass'n for Restoration of Env't (CARE) v. DeRuyter Bros. Dairy, 54 F.Supp.2d 974, 975 (E.D.Wash. 1999) ("The privilege of being heard *amicus* rests in the discretion of the court which may grant or refuse leave according as it deems the proffered information timely, useful, or otherwise.") (internal citation omitted).

"Historically, *amicus curiae* is an impartial individual who suggests the interpretation and status of the law, gives information concerning it, and advises the Court in order that justice may be done, rather than to advocate a point of view so that a cause may be won by one party or another." CARE, 54 F.Supp.2d at 975 (citation omitted). "[T]he classic role of *amicus curiae* ... [is to assist] in a case of general public interest, [by] supplementing the efforts of counsel, and drawing the court's attention to law that escaped consideration." Miller-Wohl Co. v. Comm'r of Labor & Indus., 694 F.2d 203, 204 (9th Cir. 1982).

There is no precedent directly on point in the Tenth Circuit Court of Appeals, or otherwise, in deciding whether to allow or deny *amicus* participation. Nor is there a pertinent rule of civil procedure. *See* Alliance of Auto. Mfrs. v. Gwadowsky, 297 F.Supp.2d 305, 306 (D. Me. 2006) (no provision in Federal Rules of Civil Procedure discussing conditions when *amicus* appearances should be allowed). In deciding whether to allow *amicus* participation, a court typically exercises its discretion in evaluating the following factors:

---

[1] A district court's denial of a motion to participate as *amicus curiae* is not appealable. Ass'n of Am. Sch. Paper Suppliers, 683 F. Supp. 2d 1326, 1328 (Ct. Int'l Trade 2010) (citation omitted).

> (1) whether the proposed *amicus* is a disinterested entity; (2) whether there is opposition to the entry of the *amicus*; (3) whether counsel is capable of making arguments without the assistance of an *amicus*; (4) the strength of the information and argument presented by the potential *amicus curiae's* interests; and, perhaps most importantly (5) the usefulness of information and argument presented by the potential *amicus curiae* to the court.

Ass'n of Am. Sch. Paper Suppliers, 683 F.Supp.2d at 1328 (*citing* Advanced Sys. Tech. Inc. v. United States, 69 Fed. Cl. 355, 357 (2006)).  However, while the partiality of an *amicus* is a factor to be considered, there is no rule that *amici* must be totally disinterested. *See* Waste Mgmt. of Penn., Inc. v. City of York, 162 F.R.D. 34, 36 (M.D. Pa. 1995) (citations omitted).

In determining this question, courts also consider whether the *amicus* briefs provide "unique information or perspective that can help the court beyond the help that the lawyers for the parties are able to provide."  Ryan v. Commodity Futures Trading Com'n, 125 F.3d 1062, 1063 (7th Cir. 1997) (Posner, J.)

> An amicus brief should normally be allowed when a party is not represented competently or is not represented at all, when the amicus has an interest in some other case that may be affected by the decision in the present case ... or when the amicus has unique information or perspective that can help the court beyond the help that lawyers for the parties are able to provide. Otherwise, leave to file an amicus brief should be denied.

Id.  In Voices for Choice v. Ill. Bell Tel. Co., 339 F.3d 542, 544 (7th Cir. 2003), Judge Posner admonished:

> The reasons for the policy [of denying or limiting *amicus* status] are several: judges have heavy caseloads and therefore need to minimize extraneous reading; *amicus* briefs, often solicited by parties, may be used to make an end run around court-imposed limitations on the length of parties' briefs; the time and other resources required for the preparation and study of, and response to, *amicus* briefs drive up the cost of litigation; and the filing of an *amicus* brief is often an attempt to inject interest group politics into the federal appeals process.

Moreover, courts also have observed that "[a]t the trial level, where issues of fact as well as law predominate, the aid of amicus curiae may be less appropriate than at the appellate level where such participation has become standard procedure." Yip v. Pagano, 606 F.Supp. 1566, 1568 (D.N.J. 1985).  *See also* Strasser v. Doorley, 432 F.2d 567, 569 (1st Cir. 1970) (cautioning that where joint consent of parties is lacking, court should "go slow in accepting, and even slower in inviting an *amicus* brief" unless *amicus* has special interest that justifies having a say, or existing counsel may need assistance).

## **Analysis**

Safari Club states that it consists of approximately 52,000 individuals and is an "international organization representing sportsmen and sportswomen in New Mexico" as well as throughout the United States and world. [Doc. 39, at 1-2.] Safari Club articulates its mission as "the conservation of wildlife, protection of the hunter, and education of the public concerning hunting and its use as a conservation tool." [Id., at 2.]

Safari Club supports the New Mexico trapping programs that Guardians challenges and opposes the relief requested by Guardians. Safari Club further contends that should Guardians be successful, Safari Club's interests will be harmed, in particular its members who participate in hunting. [Id.]

Guardians opposes Safari Club's *amicus* participation, contending that club has "no legitimate interest in this litigation." [Doc. 52, at 2.] Guardians seeks to impact "where, how, and/or to what extent individuals are permitted to set traps for species other than Mexican gray wolves in occupied wolf range." Such restrictions could lower the number of incidental wolf trappings in New Mexico. [Id.] Should Guardians be successful, it is possible that the Mexican gray wolves would

5

impact the success and enjoyment of the Safari Club's members' hunting efforts.  However, those interests are not raised by this litigation.

Guardians further notes that Safari Club, unlike the Defendant-Intervenors, is not an organization of trappers and does not represent the trappers' interests.  Instead, Safari Club, according to Guardians, is an organization of recreational hunters, who represent their own interests.  Guardians asserts that Safari Club's interests would not be implicated by this litigation nor would those interests be of assistance to this litigation.  More specifically, Guardians contends that Safari Club opposes the current litigation because of its self interest, *i.e.,* Guardians seeks to protect Mexican gray wolves, animals that the Safari Club perceives to interfere with their recreational hunting opportunities. [Id.] Guardians asks that Safari Club not be allowed to advance its agenda to suppress the wild Mexican wolf population by use of this litigation.

In its reply, Safari Club takes issue with many of Guardians' arguments.  In addition, Safari Club argues that its expertise in the subject matter of the litigation and "unique perspective on the issues" justify *amicus* participation. [Doc. 54, at 5.] Safari Club contends that it is a nonparty that would provide the court with a different perspective than the principal litigants.  Safari Club's presentation, in other words, would broaden the court's perspective on the issues raised. [Id.]

In determining whether Safari Club should be allowed to participate as *amicus* counsel, the Court reviewed its proposed *amicus* brief [Doc. 39-3], along with responses to Guardians' motion for summary judgment by Defendants and Defendant-Intervenors.  The legal issues raised in the briefing concern, *inter alia*, the designation of the Mexican wolf population as a "nonessential experimental population" ("NEP"), pertinent federal regulations regarding "takings of members of the NEP," whether accidental capture of Mexican gray wolves constitutes a violation of the Endangered Species Act ("ESA"), and analysis of statutory language including the exercise of "due

care" to avoid accidental capture of the wolves. *See, e.g.,* Doc. 39-3 (proposed Safari Club *amicus* brief).

The Court finds that Defendants' and Defendant-Intervenors' briefs thoroughly address all of the pertinent issues. Safari Club's proposed *amicus* brief, while well written, is duplicative of the much more extensive briefing of the same issues by the parties.

In addition, the Court considers the following factors, none of which are determinative alone – Sierra Club is not a disinterested entity, although the Court recognizes it need not be entirely neutral; Guardians opposes Sierra Club's *amicus* participation; counsel of the parties and Defendant-Intervenors are fully capable of representing their positions without the assistance of an *amicus*, especially here where Defendant-Intervenors consist of eight separate entities, including United Sportsmen for Fish and Wildlife, Inc.; and, Sierra Club's proposed *amicus* brief does not bring novel or unique information to the table regarding the pertinent legal and factual issues. The proposed *amicus* brief primarily consists of the analysis presented by the parties and Defendant-Intervenors.

This is neither a situation where a party is not represented competently or not represented at all, nor where an *amicus* can present unique information to help the Court in a way that is beyond the parties' attorneys' ability to provide. Thus, the Court declines Safari Club's request for leave to file the *amicus* brief or for *amicus* participation in this litigation.

The Court acknowledges Justice Alito's "eminently practical approach" in deciding a motion for leave to participate as *amicus curiae.* In Neonatology Assocs., P.A. v. Comm'r of Internal Revenue, 293 F.3d 128, 133 (3d Cir.), *aff'd by,* 299 F.3d 221 (2002), the now Justice Alito suggested that a court should err on the side of granting a motion like this and accepting the brief "for what it is worth." If the *amicus* brief is beneficial, then the court is edified; if not, the brief will be disregarded. Id.

7

This Court elects not to take that approach. The Court has reviewed the proposed *amicus* brief, alongside extensive briefing by the parties, and determined that the *amicus* brief is mostly duplicative. Secondly, the Court declines to impose the burden and costs of responding to an *amicus* brief on other litigating parties.

## **Conclusion**

For the above-stated reasons, and in an exercise of its sound discretion, the Court denies Safari Club's request for leave for *amicus* participation in this litigation.

IT IS THEREFORE ORDERED that the "Motion of Safari Club International for Leave to Participate as *Amicus Curiae*" [Doc. 38] is DENIED.

*Lorenzo F. Garcia*
Lorenzo F. Garcia
UNITED STATES MAGISTRATE JUDGE