# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW MEXICO

| | |
|---|---|
| WILDEARTH GUARDIANS,<br><br>      Plaintiff,<br><br>v.<br><br>ALEXANDRA SANDOVAL, Director of the New Mexico Department of Game and Fish, sued in her official capacity, and<br><br>PAUL M. KIENZLE III, Chairman of the New Mexico State Game Commission, sued in his official capacity,<br><br>      Defendants,<br><br>NEW MEXICO TRAPPERS ASSOCIATION, et al.<br>      Defendant-Intervenors,<br>                  and<br>ARIZONA GAME AND FISH COMMISSION, et al.<br><br>      *Amicus Curiae*. | Civil Case No. 1:12-cv-00118-JCH-SCY |

# REPLY IN SUPPORT OF
# DEFENDANTS' MOTION FOR ATTORNEYS' FEES AND COSTS

Defendants Alexandra Sandoval, in her official capacity as Director of the New Mexico Department of Game and Fish ("NMDGF") (the "Director"),[1] and Paul M. Kienzle III, in his official capacity as Chairman of the New Mexico State Game Commission (the "Chairman") (collectively, "Defendants"), by and through undersigned counsel, hereby submit this Reply in support of Defendants' Motion for Attorneys' Fees and Costs and Memorandum in Support (Dkt. 101) ("Motion"). For the reasons discussed herein, and in Defendants' Motion, the Court should grant Defendants' Motion and award Defendants their requested attorneys' fees and costs pursuant to Section 11(g) of the Endangered Species Act ("ESA"), 16 U.S.C. § 1540(g).

## ARGUMENT

WildEarth Guardians ("Guardians" or "Plaintiff") does not dispute that the Director achieved a resounding victory in this case on the merits. Instead, Guardians argues in its Opposition brief (Dkt. 109) ("Opp.") that the Director waived her right to fees for failing to file a timely application after entry of the original Judgment. Opp. at 11-13. Guardians' argument is mistaken, however, because it ignores the presence here of an *amended* Judgment as to which the Director's fee request was timely. *See* pp. 2-5, *infra.*

As to the Chairman, Guardians argues that he has not achieved success in the case, without which fees cannot be awarded. *See* Opp. at 15-18. In any case, Guardians contends that its claims were not "frivolous." *Id.* at 13-15; 18-22. But Guardians ignores the facts that (i)

---

[1] On May 15, 2014, the New Mexico State Game Commission announced the appointment of Ms. Alexandra Sandoval as the new Director of the NMDGF. *See* http://wildlife.state.nm.us/publications/press_releases/documents/2014/051514-Game-Commission-Alexandra-Sandoval-NMDGF-director.html (last accessed May 20, 2014). Ms. Sandoval replaced Interim Director R.J. Kirkpatrick, and accordingly replaces Mr. Kirkpatrick as the named defendant in this action. *See* Fed. R. Civ. P. 25(d).

because the issues raised in Guardians' claims against the Director were virtually identical to those raised against the Chairman, the Chairman indeed *has* also achieved success on the merits, and further (ii) that while frivolity is not necessarily the applicable standard for an award of fees, Guardians' suit was objectively frivolous from the start. *See* pp. 6-11, *infra.*

As a final fallback position, Guardians weakly asserts that "Defendants have made no attempt to separate the fees incurred while defending Guardians' claims against the Director from the fees incurred while defending the Chairman." Opp. at 22. That argument also fails in light of the similarity of issues on the merits as to both Defendants. *See* pp. 11-12, *infra.*

## I. THE DIRECTOR HAS NOT WAIVED HER CLAIM TO ATTORNEYS' FEES

Guardians claims that the Director has waived her claim to attorneys' fees because the time for filing for the Director's attorneys' fees expired on January 3, 2013 – *i.e.*, 30 days after this Court's initial Judgment entered on December 3, 2012. *See* Opp. at 11. Guardians premises this argument on the claim that there are "essentially two judgments at issue." *Id*. at 22. That is incorrect. As Defendants noted in the Motion: "Because this Motion is filed within 30 days after the Court's *amended entry of judgment*, the Motion is timely." Motion at 5, n.4 (emphasis added) (citing D.N.M.LR-Civ. 54.5). In other words, we are dealing here with an amended judgment that resets the time for filing the motion for attorneys' fees. *See Quigley v. Rosenthal*, 427 F.3d 1232, 1234, 1236-7 (10th Cir. 2005) (party moving for fees was required to file motion within 14 days after entry of amended judgment which, on remand, complied with the Tenth Circuit's mandate; holding that "although there was nothing in the amended final judgment entered in this case that either party would have challenged, the amended final judgment nevertheless constituted a 'judgment' for purposes of Rule 54 . . ..").

### A. The Original Single Judgment Has Been Amended as to Both Defendants for Purposes of Defendants' Right to Seek an Award of Attorneys' Fees

On December 3, 2012, this Court entered one "Judgment" that dismissed all of Guardians' claims as to both Defendants, without distinguishing between either Defendant. *See* Dkt. 91, Attachment A hereto. After Guardians appealed this Judgment with respect to the Chairman only, the Court of Appeals initially issued an "Order and Judgment" that directed this Court to vacate its Judgment. *See* Attachment B hereto, at 4. The Chairman moved to have the Court of Appeals amend its "Order and Judgment" to state that this Court should vacate its Judgment *only* with respect to the Chairman. *See* Attachment C hereto (Defendants' Motion for Clarification"). The Court of Appeals agreed with the Chairman, granted his Motion for Clarification, and accordingly entered an Amended Order and Judgment which directed this Court to "vacate its judgment and dismiss the action *as to the Chairman* without prejudice to refiling." *See* Attachment D hereto (emphasis added). This Court complied with the Tenth Circuit's mandate on March 18, 2014 by issuing an Order vacating its original Judgment and dismissing Guardians' action as to the Chairman without prejudice. (Dkt. 99).

Though this Court did not enter a separate document reflecting an amended final judgment pursuant to Fed. R. Civ. P. 58,[2] its March 18, 2014 Order can only be understood as such – *i.e.,* as a single, amended judgment that dismisses the action with prejudice as to the

---

[2] The Court may find that the parties have waived the requirement for a new, separate judgment document. *See Green v. Seymour*, 59 F.3d 1073, 1076 (10th Cir. 1995) (parties "'may waive the separate judgment requirement of Rule 58' by failing to object to the absence of a separate judgment, provided that 'the District Court clearly evidenced its intent that the opinion and order from which an appeal was taken would represent the final decision in the case.'") (citation omitted). In the alternative, Defendants respectfully request that the Court clarify the matter by issuing an amended judgment *nunc pro tunc* to March 18, 2014, with respect to both Defendants.

Director, and without prejudice as to the Chairman – rather than as a separate, second judgment with respect to the Chairman only. That is because the original Judgment treats both Defendants jointly in one sentence without distinguishing between them.[3] Accordingly, given the Court of Appeals decision, the original Judgment cannot stand independently on its own. For example, there is nothing on the face of the original Judgment which may be stricken with respect to the Chairman only. As a consequence, this Court's March 18 Order must be construed to have amended the original single Judgment, such that the March 18 Order effectively constitutes an amended judgment[4] for *both* Defendants for purposes of their right to seek attorneys' fees now.

That the March 18 Order effectively amended the Court's original Judgment with respect to *both* Defendants, including the Director, is further supported by the fact that the Director's success in this litigation could very well have been affected by the Court of Appeals' decision on Guardians' appeal with respect to the Chairman. A number of issues appealed by Guardians with respect to the Chairman had already been decided by this Court with respect to the Director, and any adverse decision by the appellate court would have affected the Director's success on those same claims.

For instance, Guardians appealed the issue of whether the "take" of an experimental population like the Mexican gray wolf violates ESA Section 9(a)(1)(B) in addition to the Section 10(j) Mexican Wolf Rule. *See* Attachment A to Motion (Dkt. 101-1), at 22. If the Court of Appeals had answered that question in the affirmative, such a holding would have directly

---

[3] As the original Judgment stated: "IT IS ORDERED, ADJUDGED AND DECREED that Judgment is hereby entered in favor of Defendants on all of Plaintiff's claims, that are dismissed with prejudiced."

[4] *See* note 2.

contradicted this Court's holding that the prohibitions in ESA Section 9 do *not* apply to experimental populations, *see WildEarth Guardians v. Lane*, 2012 WL 6019306, *11-12 (D.N.M. 2012) – and thus directly affected the Director's success against Guardians on this claim.[5] Similarly, if the Court of Appeals ruled that Guardians had established first-party liability through a first-party "take" by a trapper, *see* Dkt. 101-1 at 22-23, such a ruling would have directly contradicted this Court's holding that Guardians had *not* established a first-party take. *WildEarth Guardians*, 2012 WL 6019306 at *25-26. Accordingly, this Court's March 18 Order can only be properly construed as an amended judgment as to both Defendants for purposes of the filing of a motion for the award of attorneys' fees.

### B. The Director Timely Filed a Motion for an Award of Fees Given the Amended Judgment

In this Circuit, a District Court's amended judgment, following remand from the Court of Appeals, re-triggers the timeline under Federal Rules of Civil Procedure to file a motion for attorneys' fees. *See generally Quigley*, *supra; see also id*. at 1237 (citing Fed. R. Civ. P. 54, Advisory Committee Notes, 1993 Amendments ("A new period for filing [for attorneys' fees] will automatically begin if a new judgment is entered following a reversal or remand by the appellate court…")). Because Defendants' Motion was filed within 30 days after the Court's March 18 Order, the Motion is timely, and the Director has not waived her right to move for attorneys' fees.

---

[5] As discussed in the Motion (at 6-7) and below, Defendants note again that it is not a foregone conclusion in this Circuit that a party must have prevailed on the merits in order to be eligible for attorneys' fees under the ESA. *See Ctr. for Biological Diversity v. Norton*, 262 F. 3d 1077, 1080 (10th Cir. 2001).

## II. THE CHAIRMAN HAS SUCCEEDED AGAINST GUARDIANS

Guardians argues that the Chairman has not achieved "success on the merits" in this action, and that, therefore, he is not entitled to attorneys' fees. Opp. at 15 (citing *Ctr. for Biological Diversity v. Norton*, 262 F. 3d 1077, 1080 (10th Cir. 2001)). Contrary to Guardians' representation, however, the Court in *Center for Biological Diversity* left *open* the issue of whether a defendant seeking attorneys' fees under Section 1540(g) must have achieved success on the merits. *Id*. at 1080 (applying, without deciding applicability of, "catalyst test" to determine whether attorneys' fees to ESA defendants are appropriate when "there has been no adjudication on the merits"), & n.2 (distinguishing "prevailing party" case law as "not applicable" in the ESA attorneys' fees context). Indeed, the U.S. District Court for the District of Columbia recently held that "the dismissal of the case for lack of subject matter jurisdiction *does not prevent* the defendant from seeking fees" under the ESA. *Animal Welfare Institute v. Feld Entertainment, Inc*., 944 F. Supp.2d 1, 13 (D.D.C. 2013) (emphasis added). Guardians has cited no authority from the Tenth Circuit which would preclude this Court from awarding attorneys' fees under the ESA to a defendant who has been dismissed from a case for lack of subject matter jurisdiction, and Defendants are aware of none. Thus, this Court may properly find that the Chairman's dismissal from this case, *especially under the specific circumstances presented here* including Guardians' concession on appeal that it had no standing to sue the Chairman, *see* Motion at 5, warrants an award of attorneys' fees to the Chairman.

In any event, the Court can easily find that the Chairman has achieved some degree of success on the merits in this action. As discussed in Defendants' Motion, the Chairman has prevailed on the merits in this case by virtue of this Court's decision in favor of the Director. *See*

6

Motion at 13, 18-19. Indeed, neither Guardians' Complaint nor this Court's opinion in *WildEarth Guardians* makes any substantive distinction between the Director and the Chairman for purposes of Guardians' claims. *See also* pp. 4-5, *supra.*

Guardians attempts to counter the Chairman's success by asserting that "the Tenth Circuit in no way found that the facts of this case do not support Guardians' claims against the Chairman," and that "Guardians has been expressly allowed by the Tenth Circuit to refile its claims against the Chairman so long as Guardians also names as defendants all other Commission members." Opp. at 16. However, Guardians ignores the fact that in any future suit against the entire State Game Commission, Guardians will be collaterally estopped from raising the same issues that it raised with respect to both the Director and the Chairman in this suit on which this Court has ruled. *See, e.g.*, *Park Lake Res. v. U.S. Dep't of Agric.*, 378 F.3d 1132, 1136 (10th Cir. 2004) ("issue preclusion bars a party from relitigating an issue once it has suffered an adverse determination on the issue, even if the issue arises when the party is pursuing or defending against a different claim.").

Thus, as much as Guardians would like to re-litigate, for instance, whether "the take prohibition of the Mexican Wolf Rule [applies] to the regulation or non-regulation of trapping," or whether "the direct actions of the trappers constitute an intervening cause that breaks the chain of causation" as to state regulators, *see* Opp. at 17, Guardians has already litigated – and lost – those issues. *See WildEarth Guardians*, 2012 WL 6019306 at *14 ("The Court determines that, on its face, the special rule does not apply to the regulation or non-regulation of trapping, or to the promulgation or enforcement of New Mexico's state trapping regulations"), *15 ("Defendants merely permitted trapping where third party hunters or trappers engaged in

unlawful and intervening activities that would break the chain of causation with respect to Defendants."). In any future action by Guardians against the Chairman and the remaining members of the State Game Commission, Guardians will be precluded from re-litigating these issues.[6] Accordingly, the Chairman "is in a better position now than [he] was when the complaint was filed," *Animal Welfare Institute*, 944 F. Supp.2d at 14, and thus has achieved some success on the merits.

## III. AWARD OF ATTORNEYS' FEES TO BOTH DEFENDANTS IS APPROPRIATE

In their Motion, Defendants established that even under the "frivolity" standard of *Christiansburg Garment Co. v. EEOC*, 434 U.S. 412 (1978),[7] an award of attorneys' fees to both Defendants is appropriate here because Guardians' claims were clearly frivolous and lacked foundation from the outset. *See, e.g.,* Motion at 8 (listing instances in which this Court found Guardians' claims were refuted expressly by the very authorities on which Guardians relied); *id*. at 8-9 (listing instances in which this Court found that Guardians failed to present evidence in support of its claims); *id*. at 9-10 (describing Guardians' shifting legal theories throughout the case); *id*. at 10 (noting that Guardians continued to litigate its meritless claims on appeal). Guardians' arguments to the contrary must be rejected.

First, the Court can disregard Guardians' reliance on the Tutchon Declaration to support its argument that its claims were brought in good faith, *see, e.g*., Opp. at 4-5, as the

---

[6] For this reason, even if the Court agrees with Guardians that its Complaint in *this* case was sufficiently "novel" to preclude a finding of frivolity, *see* Opp. at 13, any *future* suit by Guardians against the Chairman presenting the same issues that have already been conclusively decided by this Court would certainly warrant an award of attorneys' fees against Guardians.

[7] Defendants again note that this Circuit has yet to rule whether the "frivolity" standard of *Christiansburg* applies in an ESA case. *See* Motion at 7.

determination of frivolity is unrelated to the plaintiff's subjective beliefs when filing the complaint. *See Christiansburg*, 434 U.S. at 421 ("[A] district court may in its discretion award attorney's fees to a prevailing defendant . . . upon a finding that the plaintiff's action was frivolous, unreasonable, or without foundation, *even though not brought in subjective bad faith*") (emphasis added).

Second, this was not a case in which Guardians' claims were merely "imperfect" and in which "[d]ecisive facts [did] not emerge until discovery or trial," necessitating a shift in Guardians' briefing. Opp. at 15 (quoting *Christiansburg*, 434 U.S. at 422). Indeed, there was no discovery at all in this case because *Guardians* moved for summary judgment on its claims *before* Defendants had even responded to the Complaint. *See* Motion at 9. Rather, Guardians' legal theories shifted throughout the course of the litigation as Guardians realized it did not have either the facts or the law to support its theories. Even in its Opposition to this Motion, Guardians again changed its story, characterizing its suit for the first time as based on "both existing law and/or non-frivolous *arguments for the extension* of existing law." Opp. at 5 (emphasis added). This is the first time in any of Guardians' briefings that Guardians characterized its arguments as an "extension" of the law rather than supported by existing law.

Third, Defendants do not "conflate the standard of Fed. R. Civ. P. 12(b)(6) with the standard set forth in *Christiansburg*." Opp. at 13. To the contrary, this Court has specifically stated that the *Christiansburg* standard can be evaluated by determining whether the plaintiff "fails to produce any evidence in support of material issues necessary *to withstand summary judgment*" and fails to establish "*a prima facie case*." Motion at 15 (quoting *Ortega v. Qwest Corp.*, 2013 WL 8211676, at *3 (D.N.M. June 5, 2013)) (emphasis added). Guardians failed in

9

both respects, as this Court granted both Defendants' Motion to Dismiss *and* their Cross-Motion for Summary Judgment. *See WildEarth Guardians*, 2012 WL 6019306 at *26-27. Nor does the length of this Court's opinion "negat[e] Defendants' assertions of frivolity," Opp. at 14, where that opinion categorically rejected, both as a matter law and for purposes of summary judgment, Guardians' claims.

Fourth, the fact that the parties and this Court did not raise the Chairman's inability to provide relief to Guardians under the guise of Article III standing, *see* Opp. at 18, does not detract from the frivolousness of Guardians' claims against the Chairman. Defendants and *amicus curi*ae raised the issue of the Chairman's inability to promulgate the regulations Guardians sought multiple times before this Court. *See* Motion at 17. More importantly, as Guardians does not and cannot contest, Guardians admitted throughout its briefing – both to this Court and the Court of Appeals – that the Chairman, acting alone, lacked the ability to promulgate the regulations Guardians sought by virtue of this lawsuit. *See id*. at 17-18. That the Chairman alone could not provide the redress Guardians sought was evident very early in the case (whether as part of the Article III standing inquiry or otherwise), and Guardians decision to continue litigating against him on appeal after its claims "clearly became [frivolous]" warrants an award of attorneys' fees here. *Christiansburg*, 434 U.S. at 421-22. For the Court not to award fees under this circumstance would only perpetuate such bad and wasteful behavior.

Fifth, and finally, *Red Wolf Coalition v. N. Carolina Wildlife Resources Commission*, Civ. No. 2013-60-BO (E.D.N.C. 2014), which Guardians recently cited to the Court as a "Notice of Supplemental Authority" (Dkt. 115), has no bearing on Guardians' baseless and meritless claims since that case, unlike this one, concerns taking wolves by *shooting* rather than *trapping*.

In this case, one of the (many) fatal flaws in Guardians' argument hinged on the fact that taking a Mexican gray wolf by trap would only constitute an "unavoidable and unintentional take" – and thus would not violate the applicable Section 10(j) Rule – if the *trapper* failed to exercise "due care" when *trapping*. This "due care" requirement on the part of the trapper cuts off liability to Defendants. *See WildEarth Guardians*, 2012 WL 6019306 at *15. The "due care" element does *not* apply, however, to shooting a wolf. *See Red Wolf Coalition*, Dkt. 115-1 at 13 (finding it would be "nearly impossible" for shooters to exercise "due care" to avoid shooting red wolves); 50 C.F.R. § 17.84(k)(15) (using "due care" standard only with respect to trapping, not shooting, Mexican gray wolves, and stating that "[t]aking a wolf by shooting will not be considered unavoidable, accidental, or unintentional take."). Indeed, even the *Red Wolf Coalition* court recognized the difference between trapping and shooting in its opinion, stating: "Thus, this is *not an instance where a protected animal not intended for the trap merely wanders in*," *id*. (emphasis added), and expressly stated that its injunctive relief did not "have any effect on the *trapping* of coyotes." *Id*. at 17 (emphasis added). Guardians' reliance on *Red Wolf Coalition* is yet another example of Guardians' failure to heed the express terms of the Mexican Wolf Rule.

## IV. THE ATTORNEYS' FEES AND COSTS REQUESTED ARE REASONABLE

Rather than set forth any substantive arguments against the reasonableness of the attorneys' fees requested by Defendants, Guardians spends two pages of its Opposition arguing that Defendants are required to segregate fees incurred on behalf of the Director from fees incurred on behalf of the Chairman. Opp. at 22-24. Guardians does not otherwise challenge –

and thus has waived claims as to – the reasonableness of any particular time entry, the complexity of the work performed, or the reasonableness of Defendants' counsel's rates.

As a preliminary matter, Defendants need not segregate the fees incurred because an award of attorneys' fees is appropriate to both Defendants, as set forth herein and in the Motion. In any event, however, segregation of the attorneys' fees incurred on behalf of each Defendant is impractical because the legal issues on the merits were virtually the same for both Defendants.

Guardians drew few distinctions between the two Defendants in making its claims against them. *See, e.g*., Compl. ¶¶ 28, 29, 30 (referring to "*neither* the Director *nor* the Chairman" or "the Director *and* the Chairman") (emphasis added). Thus, Defendants' counsel did not distinguish between the Defendants in making their arguments. *See, e.g.,* Defendants' Motion to Dismiss (Dkt. 19) at 10-11 (arguing ESA Section 9's prohibitions do not apply to experimental populations); *id*. at 14-16 (arguing that Defendants could not have caused a "take" of Mexican gray wolves); *id*. at 16-17 (arguing that trappers' lack of "due care" constitutes an intervening cause breaking the chain of causation as to Defendants).

Accordingly counsel's work performed on behalf of the two Defendants is indistinguishable and need not be segregated. *Cf. Harvey v. Mohammed*, 951 F.Supp.2d 47, 60 (D.D.C. 2013) ("In some cases, as here, the legal and factual issues at play may be so interrelated that it is impossible to separate time spent litigating against each defendant . . . In such cases, the Court may allocate attorney's fees among the defendants.") (citations omitted).

## CONCLUSION

For all the reasons set forth above, Defendants request that the Court grant Defendants' Motion for Attorneys' Fees and Costs.

Respectfully submitted,

  /s/ Ira T. Kasdan
Ira T. Kasdan, Esq. (*pro hac vice*)
Laurence J. Lasoff, Esq. (*pro hac vice*)
Elizabeth C. Johnson, Esq. (*pro hac vice*)
KELLEY DRYE & WARREN LLP
3050 K Street NW, Suite 400
Washington, DC 20007
Tel.: (202) 342-8400
ikasdan@kelleydrye.com
llasoff@kelleydrye.com
ejohnson@kelleydrye.com

and

  /s/ Peter Robertson

Peter Robertson
New Mexico Department of Game and Fish
One Wildlife Way
Santa Fe, NM 87507
Tel: 505.476.8148/ Fax: 505.476.8123
Peter.Robertson@state.nm.us

*Attorneys for Defendants*

# CERTIFICATE OF SERVICE

I hereby certify that, on this 2nd day of June, 2014, I caused the foregoing Reply in Support of Defendants' Motion for Attorneys' Fees and Costs, and attachments thereto, to be electronically filed using the Court's CM/ECF system, which will then cause the following parties or counsel to be served by electronic means, as more fully reflected on the Notice for Electronic Filing:

Melissa Anne Hailey, mhailey@rbarnhartlaw.com, *Attorney for Plaintiff*

James Jay Tutchton, jtutchton@wildearthguardians.org, *Attorney for Plaintiff*

Karen Budd-Falen, karen@buddfalen.com, *Attorney for Intervenor-Defendants*

Kathryn Brack Morrow, kathryn@buddfalen.com, *Attorney for Intervenor-Defendants*

Ross L. Crown, RCrown@LRLaw.com, *Attorney for Amicus Curiae*

By:   E-filed by Ira T. Kasdan
      Ira T. Kasdan