IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO


**WILDEARTH GUARDIANS,**

          **Plaintiff,**

**v.**                                    **Civ. No. 12-118 JH/SCY**

**R.J. KIRKPATRICK, Interim Director
of the New Mexico Department of Game
and Fish, sued in his official capacity, and
PAUL M KIENZLE III, Chairman of
the New Mexico State Game Commission,
sued in his official capacity,**

          **Defendants.**


## MEMORANDUM OPINION AND ORDER

This matter is before the Court on *Defendants' Motion for Attorneys' Fees and Costs* [Doc. 101], as well as *Plaintiff's Motion to Bifurcate Briefing On Defendants' Motion for Attorneys' Fees and Costs, Dkt. 101* [Doc. 113]. Plaintiff brought this case against the Defendants in their official capacities, alleging that they were liable for illegal "takes" of the Mexican gray wolf. The Defendants prevailed in the district court, where they were awarded summary judgment. Plaintiff appealed to the Tenth Circuit, but as to only one of the two Defendants. After finding that there was a lack of subject matter jurisdiction over Plaintiff's claims against the Chairman of the New Mexico State Game Commission, the Tenth Circuit remanded the case to this Court to vacate the judgment and dismiss the claims as to that Defendant only. Currently before the Court is the issue of what award of fees, if any, is appropriate under the Endangered Species Act for these Defendants, who argue that they prevailed in the litigation. After reviewing the motion, the response [Doc. 109], reply [Doc. 117],

three declarations [Docs. 110-112], and two notices of supplemental authority [Docs. 115 and 121], the Court concludes that the motion for attorney's fees and costs should be granted in part and denied in part for the reasons described herein. The motion to bifurcate will be denied.

**FACTUAL AND PROCEDURAL HISTORY**

On February 7, 2012, the WildEarth Guardians ("the Guardians"), sued the Defendants under the Endangered Species Act ("ESA"), 16 U.S.C. § 1538(a)(1)(B).  The Guardians alleged that the Defendants had committed illegal "takes" of the Mexican gray wolf, an experimental population, in violation of a special rule protecting that population. 50 C.F.R. § 17.84(k). The Guardians sought declarations that the Defendants had violated the above provisions by authorizing trapping within occupied wolf range without first exercising due care to avoid taking a Mexican gray wolf, as well as injunctions requiring Defendants to exercise due care in the future. The Defendants denied the claims and filed a motion to dismiss. [Doc. 19] In addition, the parties and intervenors filed cross motions for summary judgment. [Docs. 11, 71, 72] After careful consideration of the motions, the district court[1] granted Defendants' motion to dismiss and granted summary judgment in favor of both Defendants, the Director of the New Mexico Department of Game and Fish ("the Director") and the Chairman of the New Mexico State Game Commission ("the Chairman"). *See* Docs. 91, 92. The Guardians appealed the judgment in favor of the Chairman, but did <u>not</u> appeal the judgment in favor of the Director. Doc. 98-1 at 3.

At oral argument before the Tenth Circuit, the panel asked the Guardians whether the Chairman—the sole defendant before that court—could promulgate regulations on his own to provide the relief the Guardians sought. The Guardians conceded that as a single member of the

---

[1] At that stage of the case, U.S. Magistrate Judge Lorenzo Garcia was the presiding judge, and on December 4, 2012 he issued the Amended Memorandum Opinion and Order addressing all of the pending motions.

state game commission, the Chairman alone lacked the power to promulgate regulations and therefore could not redress the Guardians' alleged injury. Thus, the Tenth Circuit held that the Guardians' "concession is tantamount to a concession that it failed to establish Article III standing." Doc. 98-1 at 4. As a result, the court dismissed the Guardians' appeal and remanded to this court with instructions to vacate its judgment as to the Chairman only. *Id*. This court did so on March 18, 2014. Doc. 99.

On April 17, 2014, Defendants filed the motion currently before the Court.

## LEGAL STANDARD

Under the "American rule," generally parties to litigation each bear their own attorney's fees unless an applicable statute contains a fee shifting provision. *See Alyeska Pipeline Serv. Co. v. The Wilderness Society*, 421 U.S. 240, 245-46 (1975). Section 11(g)(4) of the ESA, 16 U.S.C. § 1540(g)(4), grants the Court discretion to "award costs of litigation  (including reasonable attorney and expert witness fees) to any party, whenever the court determines such award is appropriate." Although it appears neither the Supreme Court nor the Tenth Circuit has defined when it is "appropriate" to award attorneys' fees to an ESA defendant, the Supreme Court has indicated that environmental fee-shifting statutes should be interpreted similarly to their civil rights counterparts. Specifically, in *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 478 U.S. 546, 559-60 (1986), the Court interpreted a nearly identical provision of the Clean Air Act authorizing a federal court to award attorney's fees when "appropriate." The Court observed that both civil rights statutes and environmental statutes share a common purpose: "to promote citizen participation in the enforcement of important federal policies," in recognition that "in bringing legitimate actions under this section citizens would be performing a public service." *Id*. at 560. Thus, the *Delaware Valley* court applied civil rights standards to an award of

fees under the Clean Air Act. *Id*. ("Given the common purpose of both § 304(d) and § 1988 to promote citizen enforcement of important federal policies, we find no reason not to interpret both provisions governing attorney's fees in the same manner.").

At the same time, the Supreme Court has recognized that while public policy supports an attorney's fee award to prevailing plaintiffs enforcing federal civil rights laws, different equitable considerations apply to prevailing defendants seeking fee awards. *Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 418-19 (1978).  The Court pointed out that "when a district court awards counsel fees to a prevailing plaintiff, it is awarding them against a violator of federal law," a consideration that is absent when the defendant prevails. *Id*. On the other hand, the Court concluded that in order to receive fees a prevailing defendant should not be required to show that the plaintiff brought his claim in bad faith, a standard that already existed in the common law. *Id*. at 419. The Supreme Court concluded that a prevailing civil rights defendant is entitled to recover fees when the plaintiff's claims are "frivolous, unreasonable, or without foundation, even though not brought in subjective bad faith." *Id*. at 421. The *Christiansburg Garment* court cautioned that when evaluating whether a plaintiff's claims meet this standard,

> it is important that a district court resist the understandable temptation to engage in *post hoc* reasoning by concluding that, because a plaintiff did not ultimately prevail, his action must have been unreasonable or without foundation. This kind of hindsight logic could discourage all but the most airtight claims, for seldom can a prospective plaintiff be sure of ultimate success.

*Id*. at 421-22.

Against this backdrop, the Ninth Circuit followed the Supreme Court's lead and held that courts considering an award of fees under the ESA should "apply to the ESA the civil rights standard for awarding fees to prevailing defendants" as set forth in *Christiansburg*. *See Marbled Murrelet v. Babbitt*, 182 F.3d 1091, 1095 (9th Cir. 1999).  At least one district court has followed

suit. *Animal Welfare Institute v. Feld Entertainment, Inc.*, 944 F. Supp. 2d 1 (D.D.C. 2013). *See also Sierra Club v. Energy Future Holdings Corp.*, Civ. No. W-12-CV-108 (W.D. Tex. Aug. 29, 2014) (slip op.) (Doc. 121-1). This Court is in agreement with the reasoning of *Marbled Murrelet* and *Animal Welfare Institute*. The rule for awarding fees to prevailing defendants set forth in those cases satisfies the dual goals of promoting citizen participation in enforcing federal laws, and deterring the filing of frivolous or baseless lawsuits. The Court declines the Defendants' invitation to award them fees under the ESA merely because they were the prevailing parties.[2]

Thus, the Court will award the Defendants in this case their attorneys' fees if they are able to demonstrate that the Guardians' action "was frivolous, unreasonable, or without foundation," or that "the plaintiff continued to litigate it after it clearly became so." *Christiansburg*, 434 U.S. at 421-22.

## DISCUSSION

### I.   TIMELINESS OF THE DIRECTOR'S CLAIM FOR FEES

The first issue before the Court is whether or not the Director has waived his claim for attorney's fees by failing to file it in a timely fashion.

Local Rule 54.5(a) of this district provides that a motion for attorney's fees not brought under the Equal Access to Justice Act must be filed and served within 30 days after the entry of judgment, or the claim for fees is waived. This Court entered judgment against the Guardians and in favor of the Director and the Chairman on December 3, 2012. Because the Guardians did not appeal the judgment in the Director's favor, they contend that his motion for fees was due within 30 days of that date, on or before January 3, 2013. However, the Defendants filed their

---

[2] The parties dispute whether one must be a "prevailing party" in order to recover fees under the ESA, and further dispute whether the Chairman is, in fact, such a "prevailing party" under the circumstances of this case. The Court addresses that issue below.

joint motion for fees on April 17, 2014, fourteen months after that deadline. The Guardians point out that they filed their appeal on January 2, 2013, giving the Director notice on that date that the Guardians were not appealing the judgment as it pertained to him and that his motion for fees was ripe before January 3, 2013. Finally, the Guardians contend that their appeal of the judgment against the Chairman did not toll the Director's time to file his own request for attorney's fees.

The Guardians' motion is premised on the notion that there are two separate judgments in this case, one against the Director and one against the Chairman, and that each carries a separate tolling period for a motion for attorney's fees. Though this is an intriguing theory, the Court determines that it need not reach this question because even assuming the Director's motion for fees is timely, for the reasons set forth below the Court concludes that the Director is not entitled to fees because the Guardians' claims against him were not frivolous.

## II.      FRIVOLOUSNESS OF PLAINTIFF'S CLAIMS

As discussed above, under the *Christianburg* standard the Court may award attorney's fees to a prevailing defendant when the plaintiff's claims are frivolous, unreasonable, or without foundation, or when the plaintiff has continued to litigate after they have clearly became so. The Supreme Court has instructed that the district court review the entire course of the litigation in making this determination. *Christiansburg*, 434 U.S. at 421-22. But as the Tenth Circuit reaffirmed, "it is important that a district court resist the understandable temptation to engage in *post hoc* reasoning by concluding that, because a plaintiff did not ultimately prevail, his action must have been unreasonable or without foundation." *Montgomery v. Yellow Freight Sys.*, 671 F.2d 412, 414 (10th Cir. 1982) (citing *Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 421 (1978)).  "Attorney's fees are inappropriate when the plaintiff's claims are meritorious enough to receive careful attention and review." *Lawyer v. Hillcrest Hospice, Inc.*, 300 Fed. Appx. 769, 774

(11th Cir. 2008). The Tenth Circuit has made clear that the *Christianburg* standard is "difficult...to meet, to the point that rarely will a case be sufficiently frivolous to justify imposing attorney fees on the plaintiff." *Mitchell v. City of Moore, Oklahoma*, 218 F.3d 1190, 1203 (10th Cir. 2000).  "Claims that the district court dismisses for failure to state a claim do not automatically meet the standard set forth in *Christiansburg* [] for an award of fees to the defendants. . . . Those claims dismissed on 12(b)(6) motions that receive careful consideration, especially as evidenced by lengthy, detailed, and reasoned orders or opinions, are not groundless or without foundation." *Jane L. v. Bangerter*, 61 F.3d 1505, 1513 (10th Cir. 1995) (citations and quotations omitted).

Upon review of the Guardians' complaint, the Defendants' answer, the parties' dispositive cross motions and their supporting briefing packages, and Judge Garcia's Amended Memorandum Opinion and Order, the Court concludes that the Guardians' claims against the Director do not satisfy the criteria necessary for an award of fees. In other words the Guardians' claims against the Director, while ultimately unsuccessful, was not so devoid of arguable legal merit or factual support as to be frivolous within the meaning of *Christianburg*. In contrast, the Guardians' identical claims against the Chairman became frivolous when another party pointed out, and the Guardians' agreed, their claims against him could not meet the redressability requirement for Article III standing.

First, the careful consideration given to the case by the district court is some indication that the underlying claims were not frivolous. In a footnote of the opinion, Judge Garcia noted the "substantial importance" of the issues raised in the Complaint, stating that those issues "compel[led] a thorough and thoughtful consideration of the parties' arguments and authorities." Doc. 92 at 2 n.1. In the same footnote, Judge Garcia expressed his "thanks and appreciation" to

the parties and amicus for their "thorough, comprehensive arguments and briefing." In the absence of some genuinely debatable legal issues, there would be no need for such an expression of gratitude. In addition, upon consultation Judge Garcia confided to the undersigned district judge that while he ultimately was not persuaded by the position taken by the Guardians in this case, their position was not entirely unreasonable and that he felt there were non-frivolous arguments to support it.

Second, the issues raised by the Complaint—such as whether Defendants could be held liable under the ESA for "takes" of an experimental, nonessential ("ENE") population under the circumstances presented here—were complex ones that had not previously been addressed by any federal court; they were questions of first impression. Thus, in order to determine that the Guardians did not state a claim under § 9 of the ESA, the Court had to undertake an analysis of the ESA and its accompanying regulations. Doc. 92 at 13-19. The same is true for the Court's discussion of the Guardians' claim that Defendants violated the ESA's § 10(j), the special rule pertaining to the Mexican gray wolf. *Id*. at 19-28. The Court concluded that "[e]ven if Defendants could be said to have indirectly participated in the take of a Mexican gray wolf by their regulatory actions alone, the complaint fails, on its face, to demonstrate Defendants 'caused' an unlawful take." *Id*. at 26. And again, there was no case on point dealing with an experimental, nonessential species like the Mexican gray wolf. *Id*. at 26-28. This was an area of the law which, until challenged by the Guardians, had been unexplored by the federal courts. This Court concludes that the Guardians' attempt to argue by analogy for a new interpretation or even an extension of the ESA and its regulations was not, in this case, frivolous.

However, the Court concludes that after a certain point the Guardians' continuation of litigation against the Chairman, including the Guardians' appeal of the judgment in the

Chairman's favor, was frivolous. At oral argument, the Tenth Circuit raised the question of the Chairman's authority to singlehandedly provide the Guardians with the relief they were requesting, thereby pointing out the jurisdictional flaw in the Guardians' case. After the Guardians admitted that the Chairman could not provide them with the relief they were requesting, the Tenth Circuit concluded that the Court lacked subject matter jurisdiction over the case, resulting in a remand and dismissal without prejudice of the Guardians' claims against the Chairman. This outcome on their appeal should not have been unforeseen by the Guardians. In fact, the issue was addressed in briefs filed in this district court. For example, the Arizona Game and Fish Commission ("Arizona") pointed out in its amicus curiae brief [Doc. 76] that neither the Director nor the Chairman has the power to alter rules governing trapping all by himself. *See* Doc. 76 at 6 ("any regulation of the commission must be duly adopted by an affirmative vote of the majority of the commission"). In response, the Guardians admitted that Arizona had correctly stated the voting mechanism of the Commission, Doc. 81 at 4, and therefore by implication admitted the Chairman's limited ability to afford them the relief they requested. Although this exchange between the Guardians and Arizona took place late into the briefing on the motions regarding the legal merit of the claims in the Guardians' complaint, it did place the Guardians on notice of the jurisdictional problem well in advance of the filing of their appeal. Thus, this Court concludes that before they filed their appeal to the Tenth Circuit, the Guardians had been placed on notice that they could not succeed on the merits, and that their appeal was frivolous. Yet, the Guardians continued to litigate against the Chairman. They did not ask for leave to amend the complaint to add the commission as a whole as a defendant, nor did they dismiss their claims against the Chairman.

However, the Court will not award fees to the Chairman for this end-stage of the litigation in District Court. The bills provided by the Chairman to this Court do not in any way differentiate among efforts made to defend the Chairman as opposed to the Director at that stage of the litigation. The Chairman has argued that to do so would be impossible, as the claims made against him were identical to those against the Director, and therefore the claims against both Defendants were defended jointly. However, it is the Chairman's burden to show not only that he is entitled to fees, but also to prove the amount to which he is entitled. The Chairman has failed in that burden, as his fees are indistinguishable from those incurred by the Director to defend against the Guardians' claims through the entry of summary judgment by the district court. Accordingly, this court will award the Chairman attorneys' fees only for his defense of the Guardians' appeal.

## III.   PREVAILING PARTY AND JURISDICTION TO AWARD FEES

The Guardians argue that the Chairman should not recover fees because he did not achieve success on the merits of the Guardians' claims against him, and therefore he is not a "prevailing party" entitled to an award of fees. The Guardians point out that rather than ruling against the Guardians on the substantive merits of their ESA claims, the Tenth Circuit merely found a lack of Article III standing. Thus, argue the Guardians, the Chairman did not achieve success on the merits and is not a "prevailing party" such that he is entitled to fees. The Court is not persuaded by this argument.

First and foremost, it is unclear whether one must be a prevailing party to recover fees under the ESA. In *Center for Biological Diversity v. Norton*, 262 F.3d 1077, 1080 n.2 (10th Cir. 2001), the Court pointed out that the fee-shifting provision of the ESA, 16 U.S.C. § 1540(g)(4), unlike its counterparts in the Fair Housing Amendments Act and the Americans With Disabilities

Act, contains no express requirement that the party seeking attorney's fees be the "prevailing party." Accordingly, the Tenth Circuit left open the question of whether this is a requirement under the ESA. *Id*. However, this Court concludes that even if the ESA implicitly imposes such a requirement, the Chairman fulfills it under the circumstances of this case.

The Guardians argue that the Chairman did not "prevail" as that term relates to attorney's fees because the dismissal of their claims against the Chairman related to a jurisdictional deficiency rather than the substantive merits of their underlying ESA claims. However, this Court is in agreement with the D.C. Circuit, which has held that "a party need receive only some form of judicial relief, not necessarily a court-ordered consent decree or a judgment on the merits," to hold prevailing party status. *Turner v. Nat'l Transp. Safety Bd.*, 608 F.3d 12, 15 (D.C. Cir. 2010) (citations omitted). Indeed, addressing this issue in a False Claims Act case the Tenth Circuit concluded that "[t]he alternative of limiting 'prevailing' to 'prevailing on the merits' has nothing to recommend it under either the text of the statute or the considerations that lie behind fee-shifting statutes." *Grynberg v. Praxair, Inc.*, 389 F.3d 1038, 1057 (10th Cir. 2004) (quoting *Citizens for a Better Env't v. Steel Co.*, 230 F.3d 923, 930 (7th Cir. 2000)). Here, the Chairman obtained a court-ordered dismissal of the Guardians' claims against him, which can be interpreted only as a judgment in his favor—the case ended with the Guardians obtaining no relief from the Chairman. Second, the practical result of the lawsuit against the Director and the Chairman is ultimately one in which the Chairman has received judicial relief. The Court is unconvinced by the Guardians' argument that they are in a better legal position with regard to the Chairman than they were before they commenced this lawsuit. First, the order of dismissal protects the Chairman from having to alter his conduct or to pay damages from the events underlying the Guardians' complaint. Second, although the dismissal was without prejudice such

that the Guardians could, *in theory*, refile their claims if they sue the New Mexico State Game

Commission in its entirety, as a practical matter those claims likely cannot go forward because

principles of *res judicata* will likely prohibit them from doing so.[3] For example, in a future

lawsuit against the Commission the Guardians would be precluded from arguing that the

Chairman or the Commission violated ESA Section 9 based on an alleged violation of the

Mexican Wolf Rule because this Court ruled that "ESA § 9 protections, on their face, apply only

to endangered species, but not to experimental populations." Doc. 92 at 18. Similarly, the

Guardians likely would be unable to maintain a claim for violation of the Mexican Wolf Rule

against the Chairman or Commission because this Court ruled that "on its face, the [Mexican

Wolf] rule does not apply to the regulation or non-regulation of trapping, or to the promulgation

or enforcement of New Mexico's state trapping regulations." Doc. 92 at 25. These rulings, made

with regard to both Defendants, went unchallenged as to the Director and presumably would

preclude relitigation against the Chairman in the future. The Chairman now stands in a better

position vis-à-vis the Guardians than he did before they filed this case against him. Accordingly,

---

[3] *Res judicata* doctrine encompasses two distinct barriers to repeat litigation: claim preclusion
and issue preclusion. *See Baker by Thomas v. General Motors Corp.*, 522 U.S. 222, 233 n. 5
(1998). Claim preclusion bars a party from relitigating a claim or cause of action on which final
judgment has been rendered. *See* Restatement (Second) of Judgments § 24. "Under [claim
preclusion], 'a final judgment on the merits of an action precludes the parties or their privies
from relitigating issues that were or could have been raised in that action'." *Sil–Flo, Inc. v.
SFHC, Inc.*, 917 F.2d 1507, 1520 (10th Cir. 1990) (quoting *Allen v. McCurry*, 449 U.S. 90, 94
(1980)). In contrast to claim preclusion, issue preclusion bars a party from relitigating an issue
once it has suffered an adverse determination on the issue, even if the issue arises when the party
is pursuing or defending against a different claim. *See Dodge v. Cotter Corp.*, 203 F.3d 1190,
1198 (10th Cir. 2000) ("When an issue of ultimate fact has once been determined by a valid and
final judgment, that issue cannot again be litigated between the same parties in any future
lawsuit." (quoting *Ashe v. Swenson*, 397 U.S. 436, 443 (1970))). In general, issue preclusion
applies when: (1) the issue previously decided is identical with the one presented in the action in
question, (2) the prior action has been finally adjudicated on the merits, (3) the party against
whom the doctrine is invoked was a party, or in privity with a party, to the prior adjudication,
and (4) the party against whom the doctrine is raised had a full and fair opportunity to litigate the
issue in the prior action. *Id*.

the Chairman is the prevailing party, and he may seek fees under the ESA's fee shifting provision. At least one other district court has reached the same result under similar circumstances. *See Animal Welfare Institute v. Feld Entertainment, Inc.*, 944 F. Supp. 2d 1, 13 (D.D.C. 2013) (holding, in a case brought under the ESA, that "the dismissal of the case for lack of subject matter jurisdiction does not prevent the defendant from seeking fees as a prevailing party.").

In light of the foregoing, the Court concludes that the Chairman is the prevailing party and that it would be appropriate to award the Chairman attorney's fees expended in defending the Guardians' frivolous appeal to the Tenth Circuit.

## IV.     JURISDICTION TO AWARD FEES

Although neither party has expressly challenged this Court's jurisdiction to award fees to the Chairman in light of the fact that the claims against him were dismissed for lack of jurisdiction, the Court concludes that such jurisdiction exists.

In *Citizens for a Better Env't v. Steel Co.*, 230 F.3d 923 (7th Cir. 2000), the Seventh Circuit addressed this precise question. The court began its analysis by noting, "[c]ourts that lack jurisdiction with respect to one kind of decision may have it with respect to another. A court, for example, always has jurisdiction to consider its own jurisdiction." *Id.* at 926 (citation and quotations omitted). Thus, the court framed the question as whether an exercise of jurisdiction to award attorney fees in the absence of subject matter jurisdiction over the underlying claim would run afoul of Article III. *Id.* Holding in the negative, the court distinguished between the adjudicatory authority governed by Article III and the legislative authority imposed by Article I. *Id.* at 927. Guided largely by the Supreme Court's decision in *Willy v. Coastal Corp.*, 503 U.S. 131 (1992), the Seventh Circuit acknowledged that statutes such as 28 U.S.C. §§ 1919 and

1447(c)19 specifically "permit awards of litigation expenses in suits that federal courts are not authorized to decide on the merits" and the "[u]se of this fee-shifting power has been uncontroversial." *Id.* at 927. Further, "*Willy* held that attorneys' fees may be awarded under Rule 11 even if the case never came within the district court's subject-matter jurisdiction." *Id.* Thus, the Seventh Circuit reasoned, if the claim for attorney fees is a separate "case or controversy," the federal court may have Article III authority to determine the matter. *Id.* The court then reasoned Steel's claim for attorney fees satisfied these requirements: Steel had suffered an injury that may be redressed by the award of attorney fees. *Id.* at 926. Accordingly, the court concluded, "Article III therefore presents no obstacle to fee-shifting, whether or not the fees were incurred in proceedings that were cases or controversies under Article III." *Id.* at 928.

In *Grynberg v. Praxair, Inc.*, 389 F.3d 1038, 1057 (10th Cir. 2004), the Tenth Circuit adopted the reasoning in *Steel*. As a result, the *Grynberg* court found that the district court had jurisdiction to award attorney's fees despite the fact that the underlying action had been dismissed for lack of subject matter jurisdiction. By the same token, this Court has jurisdiction to award attorney's fees in the circumstances presented here.

V.     **MOTION TO BIFURCATE**

The Guardians have moved to bifurcate the briefing as to the issues of whether either Defendant has the right to recover fees, and if so, the reasonableness of the fees requested.

The Guardians filed their motion to bifurcate contemporaneously with their response to Defendants' motion for attorney's fees. As grounds for the motion, the Guardians contend that bifurcation is warranted by the complexity of the case and its procedural history, as well as the fact that defense counsels' time logs and invoices make no distinction between work performed in defense of the Director versus that performed for the Chairman. Doc. 113 at 4. As set forth

above, the Court has concluded that the Guardians' claims against the Director were not frivolous, unreasonable, or without foundation, and therefore he is not entitled to recover fees. The Court similarly concluded that the Guardians' claims against the Chairman were not frivolous, unreasonable, or without foundation until the point at which Arizona pointed out, and Guardians admitted, that the Chairman alone in the absence of the entire New Mexico State Game Commission could not provide the Guardians with the relief they requested. Thus, all that remains is for the Court to determine if the Chairman has met his burden to show that the fees he incurred after that point are reasonable. The Guardians point out that the legal bills offered by Defendants as evidence of the fees incurred fail to distinguish fees incurred on behalf of the Chairman as opposed to those expended for the Director's benefit. The Court concurs that this omission exists, but concludes that it does not require additional briefing. It is the Directors' burden to show the fees he incurred and their reasonableness. To the extent he has failed to delineate his fees from those of his codefendant, he has not met that burden. Accordingly, the Court cannot apportion the Chairman's fees for the period prior to the filing of the Guardians' Notice of Appeal on December 28, 2012, and will not award the Chairman fees prior to that date.

The norm in this judicial district is for parties to addresses the dual questions of whether a party is entitled to recover fees and the reasonableness of the requested fees in a single briefing package. The Court sees no reason to bifurcate, and therefore expand, the briefing on these issues in this case. The information provided to the Court in the original briefing package will suffice. Therefore, the motion to bifurcate will be denied.

VI.     **APPROPRIATE AMOUNT OF FEES TO BE AWARDED TO THE CHAIRMAN**

To determine the reasonableness of a fee request, a court must begin by calculating the so-called "lodestar amount" of a fee, and a claimant is entitled to the presumption that this

lodestar amount reflects a "reasonable" fee. *See Pennsylvania v. Delaware Valley Citizens'*

*Council for Clean Air*, 478 U.S. 546, 563-65 (1986); *Cooper v. Utah*, 894 F.2d 1169, 1171 (10th

Cir. 1990). The lodestar calculation is the product of the number of attorney hours "reasonably

expended" and a "reasonable hourly rate." *See Hensley*, 461 U.S. at 433; *Phelps v. Hamilton*,

120 F.3d 1126, 1131 (10th Cir. 1997). The setting of a reasonable hourly rate is within the

district court's discretion. *Carter v. Sedgwick County*, 36 F.3d 952, 956 (10th Cir. 1994). Hourly

rates must reflect the "prevailing market rates in the relevant community." *Blum v. Stenson*, 465

U.S. at 895, 104 S.Ct. at 1547. Unless the subject of the litigation is "so unusual or requires such

special skills" that only an out-of-state lawyer possesses, "the fee rates of the local area should

be applied even when the lawyers seeking fees are from another area." *Ramos v. Lamm*, 713 F.2d

546, 555 (10th Cir. 1983). *See also Lippoldt v. Cole*, 468 F.3d 1204, 1224-25 (10th Cir. 2006). If

the district court does not have adequate evidence of prevailing market rates for attorney fees,

then it may, "in its discretion, use other relevant factors, including its own knowledge, to

establish the rate." *Case v. Unified Sch. Dist. No. 233, Johnson Cnty., Kan.*, 157 F.3d 1243, 1257

(10th Cir. 1998). A district judge may consider his or her "own knowledge of prevailing market

rates as well as other indicia of a reasonable market rate." *Metz v. Merrill Lynch, Pierce, Fenner*

*& Smith, Inc.*, 39 F.3d 1482, 1493 (10th Cir. 1994) (internal quotation marks omitted).

### A.      Reasonable Hourly Rates

The Court concludes that the rate requested by Defendants for the representation

provided by their lead counsel Kelley Drye & Warren—a "blended" rate of $450 per hour for the

work of partners with more than 25 years of experience as well as for associates with fewer than

ten years of experience—is excessive. While those rates may be reasonable for law firms in the

District of Columbia where lead defense counsel practice, they are significantly above those for

lawyers in New Mexico, where this case arose and was litigated from start to finish. In the undersigned judge's more than 35 years in New Mexico practicing law and sitting on the bench, she has never seen rates this high collected by or awarded to any New Mexico litigator. Further, Defendants have made no showing that it was necessary to engage counsel from outside the state at a much higher hourly rate in order to adequately defend themselves in this lawsuit. Therefore, the Court concludes that it should award fees based upon the prevailing rates for experienced lawyers in New Mexico.

The evidence Defendants offered in support of their request for attorneys' fees gives some indication of reasonable rates in New Mexico. Defendants' local counsel, experienced shareholders from Keleher & McLeod, an established and respectable firm based in Albuquerque, charged $200 per hour for the work that they did on this case. In addition, Defendants also provided evidence that the median hourly rate as between partners and associates at Holland & Hart, a Denver-based law firm with a satellite office in Santa Fe, New Mexico, is $360 per hour. While Denver attorneys' hourly rates are usually significantly higher than those in New Mexico, they are closer to the rates of this market than those charged by attorneys in the District of Columbia. On the other hand, the Court acknowledges that the lawyers from Kelley Drye have extensive expertise in litigating cases under the ESA, and that lawyers with such specialized expertise often may command higher hourly rates. In light of the foregoing, as well as this Court's knowledge of prevailing attorney rates in New Mexico, the Court concludes that an appropriate rate for the work of counsel from Kelley Drye (which is a "blended" rate for experienced partners and associates working under their supervision) is $300

per hour.[4] The Court further finds that the requested hourly rate of $200 per hour for New Mexico counsel, Keleher & McLeod, is reasonable.

### B.       Number of Hours

The Court has reviewed all of the monthly bills submitted by Kelley Drye and Keleher & McLeod starting from December 28, 2012, the date the Guardians filed their Notice Appeal, forward. In so doing, the Court has carefully considered the descriptions of the work performed and the number of hours expended by counsel. The Court finds the hours expended to be reasonable, with one minor exception. Both lead counsel, Ira Kasdan, and an associate attorney, Elizabeth Johnson, traveled from Washington, D.C. to Denver for the oral argument before the Tenth Circuit. Strictly speaking, it was necessary for only one lawyer to attend the oral argument. On the other hand, as the lawyer who did much of the work researching and writing the Chairman's appellate brief, the Court believes that Ms. Johnson's presence at the argument probably provided *some* value to the Chairman. In fairness, her hours will be reduced by six because of duplicative nature of having two lawyers attend the argument.

For lawyers from Kelley Drye, the Court will award the Chairman 544.7 attorney hours at $300 per hour for a total of $163,410.00; 16.5 paralegal hours at $125 per hour for a total of $2,062.50; and 1.8 clerk hours at $90 per hour for a total of $162.00. The Court will further award the Chairman $3,425.31 in expenses, which include items such as long distance telephone charges, electronic research, travel, lodging, copies, FedEx, and PACER charges. For lawyers

---

[4] The Court rejects the rate of $230 per hour requested by Defendants for the work of a "clerk" at Kelley Drye. Much more reasonable is the $90 per hour rate applied by Keleher & McLeod, and the Court will use that rate when calculating the total fee here. Similarly, lead counsel's requested hourly rate, $285 per hour, for its paralegal will be reduced to $125, which is closer to the customary rate for New Mexico paralegals.

from Keleher & McLeod, the Court will award all fees at the rate of $200 per hour, expenses[5],

and gross receipts tax requested from December 28, 2012 forward for a total of $4,939.26. Thus,

the total amount awarded to the Chairman is **$173,999.07.**


        **IT IS THEREFORE ORDERED** that:

(1)     *Defendants' Motion for Attorneys' Fees and Costs* [Doc. 101] is **GRANTED IN PART**

**AND DENIED IN PART** as explained herein;

(2)     The  Court  awards  the  Chairman  reasonable  attorney's  fees  in  the  amount  of

$**$173,999.07**; and

(3) The *Plaintiff's Motion to Bifurcate Briefing On Defendants' Motion for Attorneys' Fees and*

*Costs, Dkt. 101* [Doc. 113] is **DENIED**.


_____
**UNITED STATES DISTRICT JUDGE**

---

[5] The amount of expenses for this period incurred by Keleher & McLeod is trivial: $1.46 for long
distance telephone and PACER charges.